UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ALEX IFANYI BINI,

Petitioner,

v.

CURTIS J. ALJETS,
District Director Immigration and Naturalization (INS),

Respondent.

Civil No. 01-629 (RHK/ESS)

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner Alex Ifanyi Bini's pro se application for habeas corpus relief under 28 U.S.C. § 2241 [Docket No. 1]. On April 20, 2001, the undersigned filed an order requiring Respondent Curtis J. Aljets to show cause why the writ should not be granted [Docket No. 3]. On May 8, 2001, Respondent filed a Return to Order to Show Cause Why Writ Should Not Be Granted, requesting that Petitioner's application for habeas relief be denied. [Docket No. 4].

These proceedings have been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, it is recommended that the petition for writ of habeas corpus be denied.

## I. PROCEDURAL HISTORY

At the time of filing his petition for writ of habeas corpus, Petitioner was in the custody of the Immigration and Naturalization Service (INS). He has been in the custody of the INS since October 13, 1999.

Petitioner was born in Nigeria on April 15, 1956. He came to the United States on or about October 28, 1984. He had permission to stay in the United States for no more than 29 days; without

FILED AUG 0 8 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.______
DEPUTY CLERK______

the permission of the INS, he remained in the United States beyond the 29-day period. On October 12, 1999, in the Hennepin County District Court, Petitioner pled guilty to forgery and to giving false information to a police officer for actions taking place on March 12, 1999.[1] He was taken into INS custody the following day and removal proceedings were commenced against him.

The basis for Petitioner's removal was two-fold. Firstly, the INS alleged that, after admission as a non-immigrant, Petitioner stayed in the country longer than he was permitted. See 8 U.S.C. § 1227(a)(1)(B). Secondly, the INS alleged that the Petitioner was convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct. See 8 U.S.C. § 1227(a)(2)(A)(ii). On December 2, 1999, before an Immigration Judge, Petitioner admitted all of the allegations, except for the allegation that his two convictions arose of separate incidents. The Immigration Court concluded that Petitioner could be removed on the first charge. Furthermore, despite the fact that both of Petitioner's crimes were committed on the same day, were charged in the same Complaint, and involved deceptive conduct, the Immigration Court concluded that the crimes did *not* arise out of a single scheme of criminal misconduct and that Petitioner could be removed on the second charge as well.

On January 4, 2000, Petitioner submitted an Application for Asylum and Withholding of Removal, alleging that, as a Christian, he would be persecuted by Muslims if he returned to Nigeria. He further alleged that, as a convicted criminal returning to Nigeria, he would likely be tortured by authorities there. On February 20, 2000, the Immigration Court considered Petitioner's request for asylum and considered whether Petitioner was eligible for withholding of removal pursuant to Article 3 of the Torture Convention. The Immigration Court found Petitioner removable on both

---

[1]All references to documents in the proceedings before the Immigration Court can be found in the Exhibits to Return to Order to Show Cause Why Writ Should Not Be Granted [Docket No. 5].

charges, denied his application for asylum as untimely filed, denied his application for withholding of removal for lack of evidence that Petitioner would be tortured, denied his application for voluntary departure, and ordered that he be removed from the United States to Nigeria.

On March 6, 2000, Petitioner submitted a Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge. Petitioner filed an untimely brief on December 26, 2000. On February 26, 2001, the Board of Immigration Appeals (BIA) rejected the brief, affirmed the decision of the Immigration Court, and dismissed the appeal. A Warrant of Removal/Deportation was signed on March 28, 2001.[2]

On April 11, 2001, Petitioner filed a Petition for a Writ of Habeas Corpus, alleging that: 1) he has clearly established that he faces a high probability of being tortured upon his return to Nigeria; 2) he has requested a re-opening of his hearing to apply for relief pursuant to Article 3 of the Torture Convention; and 3) that he will be tortured because of an immutable characteristic [Docket No. 1]. Petitioner also filed a Memorandum in support of his Petition, in which he alleged several substantive and procedural errors on the part of the BIA and the Immigration Judge [Docket No. 2]. He also invoked the "procedural safeguards" of the Fifth Amendment to the United States Constitution and two statutes that were repealed in 1996. See 8 U.S.C. §§ 1105a and 1182(c). On May 14, 2001, the Petitioner filed a letter asking the Court to stay any action on his order for deportation until after a decision on his petition is made [Docket No. 6]. In this letter, Petitioner invoked the Fifth and Fourteenth Amendments to the United States Constitution and 8 U.S.C. § 1226(e).

## II. DISCUSSION

The Respondent concedes that this Court has jurisdiction to determine whether Petitioner's

---

[2] It is the Court's understanding that the Petitioner has not made any further appeals in his removal proceedings.

confinement violates the United States Constitution. See 28 U.S.C. § 2241(c)(3). The Petitioner is being held pursuant 8 U.S.C. § 1231(a)(6). Section 1231(a)(1) establishes that an alien who has been order removed may be held during a 90-day "removal period," the period in which removal shall take place. In this case, the "removal period" commenced when the order for removal became administratively final, February 26, 2001, the date of the BIA's dismissal of Petitioner's appeal. See 8 U.S.C. § 1231(a)(1)(B)(i). However, pursuant to 8 U.S.C. § 1231(a)(6), Petitioner can be (and continues to be) held beyond the 90-day removal period. The Supreme Court has recently determined that habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention. See Zadvydas v. Davis, __ U.S. __, __, 121, S.Ct. 2491, 2504 (2001). If an alien's post-removal-period detention extends beyond a reasonable time, further detention becomes unconstitutional and not authorized by statute. Id. Petitioner filed his Petition for Writ of Habeas Corpus on April 11, 2001, during the removal period. While he may not have been entitled to relief under Zadvydas at that time, his continued detention raises the constitutional concerns involved in that case.

The habeas corpus statute also gives the Court jurisdiction to determine pure questions of law. See Shah v. Reno, 183 F.3d 719, 724 (8th Cir. 1999). However, this Court does not have jurisdiction to review directly the decision to deport the Petitioner. See Id., at 723. The Immigration and Nationality Act has provided that the proper forum for such a review is the court of appeals in which the immigration judge completed the proceedings. 8 U.S.C. § 1252(b)(2).

The Petition for Writ of Habeas Corpus [Docket No. 1] lists three grounds for relief. Those grounds essentially challenge the findings of the Immigration Court. This Court does not have jurisdiction to review directly the decision of the Immigration Court. Unless and until the Eighth Circuit, the proper forum for such issues, decides that the Immigration Court erred in its decision,

this Court cannot decide whether Petitioner's continued detention warrants Habeas Corpus relief on those grounds. Strictly speaking, this Court does not have jurisdiction to render a decision on the merits of the Petition.

However, the Petitioner raises other grounds for relief in his supporting documents. As with the Petition itself, many of the issues raised in Petitioner's Memorandum [Docket No. 2] are outside this Court's jurisdiction because they allege substantive and procedural errors of the Immigration Court. However, the Memorandum raises two issues over which the Court has jurisdiction: a Fifth Amendment claim and the applicability of 8 U.S.C. §§ 1105a and 1182(c).

The Court is unsure of Petitioner's intention by invoking the "procedural safeguards" of the Fifth Amendment. To the extent that Petitioner refers to procedural errors committed by the Immigration Court, the Eighth Circuit, not this Court, has jurisdiction over those questions. To the extent that it refers to the more general constitutional notion of procedural due process, this Court has subject matter jurisdiction.

To determine what process is due in a particular case, the Court considers: 1) the private interest that will be affected by government action; 2) the government's interest; and 3) the risk of erroneous deprivation of rights and the likely value, if any, of additional procedural safeguards. Wallin v. Minnesota Dept. of Corrections, 153 F.3d 681 (8th Cir. 1998)(citing Matthews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The Supreme Court has repeatedly emphasized that "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478 (1977)(citations omitted). The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." Id. However, the due process clause requires government

to provide a person subject to deportation with a meaningful opportunity to be heard. Talamantes-Penalver v I.N.S., 51 F3d 133 (8th Cir. 1995); see also Afolayan v. I.N.S., 219 F.3d 784 (8th Cir. 2000)(due process requires notice and a fair hearing); United States v. Torres-Sanchez, 68 F.3d 227 (8th Cir. 1995)(due process violation in a deportation proceeding requires both a fundamental procedural error and prejudice resulting therefrom).

The Petitioner has not established a due process violation. The record reflects that the Petitioner was notified of the bases for the removal proceedings, he was given a hearing, he was represented by counsel, he was permitted to appeal the decision to the BIA, and he had a statutory right to appeal the matter to the Eighth Circuit. These procedural safeguards were sufficient to protect Petitioner's liberty interest.

Pursuant to Zadvydas, the Court also has jurisdiction to consider whether Petitioner's post-removal-period detention is unconstitutional. The Court cannot conclude that it is. While the removal period has passed, Respondent is permitted to detain Petitioner beyond the removal period for a "reasonable time." Zadvydas, supra. Considering that Petitioner has requested a stay of deportation while his Petition is considered, the Court cannot conclude that his detention has been unreasonably long. In addition, there is no evidence that the Respondent intends to delay deportation of the Petitioner. At this point, Petitioner's continued detention does not violate the United States Constitution.

With respect to the applicability of 8 U.S.C. §§ 1105a and 1182(c), the Court has jurisdiction over this question because it involves an issue of "pure" law, i.e. the effect of a repealed statute. These statutes were expressly repealed on September 30, 1996 by Pub.L. 104-208, Div. C. Title III, §§ 306(b) and 304(b), respectively. The effect of a repealing act where nothing is substituted for the act repealed is to obliterate repealed act as completely as if it had never been passed. See In re

Shaver, 140 F.2d 180 (7th Cir. 1944); see also Home Sav. & Loan Ass'n v. Plass, 57 F.2d 117 (9th Cir. 1932)(powers derived wholly from statute are extinguished by its repeal). The provisions of these repealed statutes cannot provide the Petitioner with a basis for relief.

Finally, the Court can consider the arguments made in the Petitioner's letter of May 14, 2001[Docket No. 6]. Plaintiff again raised a Fifth Amendment claim; the Court has nothing to add to its earlier Fifth Amendment analysis. Petitioner also raises a Fourteenth Amendment equal protection argument. While the Fourteenth Amendment is not binding on the federal government, this guarantee of equal protection applies to the federal government through the Fifth Amendment Due Process Clause. See Gutierrez v. Greene, 190 F.3d 1135, 1152 (10th Cir. 1999)(citing Schweiker v. Wilson, 450 U.S. 221, 226 & n. 6, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981)). Petitioner has not substantiated his equal protection claim. Plaintiff's letter is incomplete, because a word is missing. He states that an "Officer's failure to perform a statutory [?] has resulted in [an equal protection violation]. If the omitted word is "duty," the proper remedy for Petitioner would be mandamus, which is only appropriate under extraordinary circumstances. See In re SDDS, Inc., 97 F.3d 1030 (8th Cir. 1996). Looking to other instances in the record in which the Plaintiff relied on a statute for relief, Petitioner has argued that he should be entitled to *discretionary* relief pursuant to 8 U.S.C. § 1182(c). Even if this law had not been repealed, as discussed above, the denial of discretionary relief would not constitute a violation of equal protection. See, e.g., Central Airlines, Inc. v. United States, 138 F.3d 333 (8th Cir. 1998)(unequal application of agency regulations does not violate equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination); Seven Star Inc., v. United States, 873 F.2d 225, 227 (9th Cir. 1989)(a claim that an administrative agency has made different decisions in different cases, in different years, does not give rise to a claim for relief on equal protection grounds); Shanker v. Helsby, 676 F.2d 31

(2d Cir. 1982)(mere fact that separate administrative bodies mete out different penalties without more does not violate equal protection). Petitioner's allegations regarding an equal protection violation are fatally deficient. Finally, Petitioner's allegation that his detention pursuant to Section 236(e) of the Immigration and Nationality Act, 8 U.S.C. § 1226(e), violates his due process rights is flawed. This section of the statute involves the detention of aliens pending a decision on whether the aliens is to be removed from the United States. 8 U.S.C. § 1226(a). Because the Immigration Court has ordered that Petitioner be deported, he is being held pursuant to 8 U.S.C. § 1231(a)(6). For purposes of Habeas Corpus, Petitioner's *earlier* detention pursuant to 8 U.S.C. § 1226(e) is moot, depriving the Court of subject matter jurisdiction. Furthermore, as discussed above, his detention pursuant to 8 U.S.C. § 1231(a)(6) does not violate due process, so long as he is only detained for a "reasonable time" beyond the 90-day removal period. See Zadvydas, supra.

Finally, while Petitioner's May 14, 2001 letter is not properly a motion, his letter "respectfully moves this Honourable Court to issue an order stopping or staying any deportation order issued by the Immigration and Naturalization Service pending the outcome of [these] proceedings." In the letter, he alleges that prison officials have threatened his immediate deportation. While the Court recommends that his petition be denied, a stay of the deportation order is appropriate to guarantee Petitioner's right to appeal.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. The petition for writ of habeas corpus [Docket No. 1] be DENIED;

2. Any action against the Petitioner pursuant to a Warrant of Removal/Deportation be STAYED, pending appeal of this denial.

Dated: August 8, 2001

E. S. SWEARINGEN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.